67 F.3d 20
 LEADERTEX, INC., Plaintiff-Counter-Defendant-Appellee,
v.
MORGANTON DYEING & FINISHING CORP.,
Defendant-Counter-Claimant-Appellant,
Does 1 Through 25, Inclusive, Defendants.
 No. 1170, Docket 94-7949.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 6, 1995.
Decided Sept. 28, 1995.
 
 Donald L. Kreindler, New York City (David P. Lennon, Kreindler & Relkin, P.C., of counsel), for Appellant Morganton Dyeing & Finishing Corp.
 William C. Kratenstein, New York City (Becker Ross Stone DeStefano & Klein; Morgan D. Bottehsazan, Great Neck, New York, of counsel), for Appellee Leadertex, Inc.
 Before: KEARSE, CARDAMONE, and MAHONEY, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 Before us is an order from the Southern District of New York (Duffy, J.) that denied a belated motion to compel arbitration. Defendant had made the motion after plaintiff brought suit against it for breach of contract, breach of warranty, negligence, conversion, replevin, and defamation. We must decide whether the party seeking to enforce arbitration has in this case waived that right.
 
 
 2
 Defendant Morganton Dyeing & Finishing Corp. (Morganton) initially sought arbitration eight months after plaintiff's action was commenced, and seven months after successfully removing the case into federal court. Plaintiff Leadertex, Inc. during those same months suffered a substantial fall-off of its fabric-converting business because, pending adjudication, nearly its entire stock of inventory languished in Morganton's warehouse. Judge Duffy attributed this business injury to Morganton's delay in seeking to compel arbitration. He therefore concluded that as a result of its tardiness in seeking to compel arbitration, Morganton had waived its right to that forum for relief. For the reasons given below, we affirm.
 
 BACKGROUND
 I Business Dealings Between the Parties
 
 3
 Plaintiff Leadertex, Inc. is a small family-owned New York corporation in the textile converting business. It purchases raw fabrics, known in the business as "greige goods," which it arranges to have dyed and finished, and then sells the finished goods to various garment manufacturers. Defendant Morganton, a North Carolina corporation licensed and qualified to do business in the state of New York, is a fabric dyer. It is one of the dye houses that does commission dyeing and finishing work for Leadertex.
 
 
 4
 The business dealings between Morganton and Leadertex date back to 1987. Under a long-standing arrangement between them, Morganton warehoused large quantities of fabrics imported by Leadertex, pending instructions either to ship the greige goods to other processing companies for finishing, or to dye and finish, per specification, certain fabrics itself and to ship the finished goods to Leadertex customers. Morganton generally provided warehousing without charge. Such an arrangement is standard in the fabric converting industry.
 
 
 5
 As goods were delivered to Morganton, it would offer its standard "Quotation and Contract for Dyeing and Finishing," setting forth the current prices for its services. When Morganton received specific processing orders for any of the fabrics, it would send a "Supplement to Quotation and Contract," listing the current price for the processes requested. Morganton delivered approximately 19 "contract" forms and 81 "supplemental contract" forms to Leadertex during their course of dealings. Although Leadertex never signed any of these forms, it continuously dealt with Morganton in accordance with the contract terms.
 
 
 6
 Each of Morganton's contract forms contains arbitration and lien provisions that are standard in the finishing industry. The lien provision permits Morganton to hold its customer's goods as security for non-payment of invoices for dyeing and finishing work it has performed. The broadly worded arbitration clause provides: "Any controversy or claim arising under or in relation to this order or contract, or any modification thereof, shall be settled by arbitration." The contracts also state that they are offered "subject to all the terms and conditions [contained in the Quotation and Contract], including the provisions for arbitration " (emphasis added), and the supplemental contracts contain almost identical language incorporating the arbitration clause.
 
 
 7
 A dispute arose concerning defective goods. It climaxed in early 1993 when Leadertex customers returned substantial orders of fabric as being of unacceptable quality. As a consequence, Leadertex refused to pay Morganton processing charges for goods it alleged were defectively dyed. Morganton insisted that most of the defects in the finished goods were due to the substandard quality of the greige goods supplied it by Leadertex. On a number of occasions from late 1991 through early 1993, Morganton wrote Leadertex to complain of receiving fabric from Leadertex's foreign suppliers with various defects, including improper bleaching, creases, holes, mildew, spots, dirt, burns, and foreign yarn. The letters asserted that Morganton would process this fabric "totally at [Leadertex's] risk." The record does not make clear whether any of the letters referred to the same goods ultimately rejected by Leadertex customers.
 
 
 8
 When Leadertex refused to pay the disputed invoices, Morganton exercised its bailee's lien and refused to release any fabric on Leadertex's orders. On April 20, 1993 Morganton's attorneys sent a letter advising Leadertex that they had been retained to enforce the unpaid invoices. Leadertex filed the instant suit in state court shortly thereafter.
 
 II History of the Litigation
 A. Procedural Account
 
 9
 We turn now to an account of the legal proceedings that have thus far ensued. On May 1, 1993 Leadertex commenced an action against Morganton in the New York Supreme Court, County of New York, for breach of contract, negligence, and breach of warranty. The complaint alleged that Leadertex had suffered $953,000 in lost sales due to defectively dyed goods, plus unspecified loss of business and other consequential damages. One month later on June 3, 1993 Morganton had the case removed to federal court in the Southern District of New York where it filed a counterclaim for $231,156.40 in unpaid dyeing charges.
 
 
 10
 In July 1993 plaintiff sought leave to file an amended complaint asserting replevin and conversion claims with respect to 102,050 yards of greige goods and 131,200 yards of finished goods held in Morganton's warehouse. The amended complaint also added charges against unnamed defendants (Does "1" through "25") in relation to a newly-included defamation claim. The defamation claim was based on slanderous statements Morganton allegedly had made in February 1993, when a representative of Jones New York, one of the Leadertex customers that had rejected defective finished fabric, visited the Morganton plant in North Carolina, supposedly "to examine the goods and resolve the quality dispute." In the course of that representative's inspection visit, according to Leadertex's amended complaint, Morganton made a statement to the effect that
 
 
 11
 Leadertex is dishonest in their conduct of business, incompetent and incapable to supply manufacturers with goods conforming in color and quality with that requested by its customers, and that Leadertex is in practice of selling goods defective in quality, and that Leadertex willingly and with intent to defraud Jones New York shipped them defective, non-conforming goods.
 
 
 12
 The amended complaint was entered by leave of court on September 13, 1993. In its answer to the amended complaint, filed November 1, 1993, Morganton raised numerous affirmative defenses, including defenses based on disclaimers and exculpatory provisions contained in its standard contract forms. At that point--six months after defendant's suit had been commenced against it--Morganton had not asserted a defense based on the contractual right to compel arbitration.
 
 
 13
 Meanwhile, at a scheduling conference held in October 1993, a trial ready date was set for March 14, 1994, and the parties were ordered to conclude discovery by February 4, 1994. Morganton vigorously pursued discovery, submitting multiple prolix interrogatories and demands for document production, and scheduling depositions. Leadertex evaded discovery with almost equally energetic foot-dragging, producing only a handful of the documents requested, giving late and unresponsive answers to interrogatories or none at all, and failing to produce witnesses for scheduled depositions. Discovery was nonetheless completed.
 
 
 14
 In December 1993 Leadertex moved for partial summary judgment on its replevin claim for greige goods in Morganton's possession, asserting that the finished goods also retained by Morganton were of more than sufficient value to serve as security for the disputed invoices. Leadertex declared its business existence was threatened by the detention of goods representing the bulk of its inventory: it was experiencing severe cash flow problems, was unable to fill customer orders, and had seen its December sales drop more than 90 percent from the previous year, from $522,000 to $36,000. Leadertex alleged Morganton's action in detaining almost its entire stock was designed to "crush" it. Morganton responded to plaintiff's summary judgment motion in early January 1994 with a cross-motion to compel arbitration of all plaintiff's causes of action pending before the trial court.
 
 B. District Court Ruling
 
 15
 By a memorandum and order issued August 17, 1994 Judge Duffy granted plaintiff's motion for partial summary judgment for replevin of its greige goods. The district court rejected Morganton's claim that the contractual lien granted it the right to retain the goods as security, finding that a provision allowing a merchant to hold disproportionately more security than was due amounted to a material alteration of the contract. Under New York law, new terms in a written confirmation can become part of the parties' agreement unless they "materially alter" the agreement. N.Y.U.C.C. Sec. 2-207 (McKinney 1993). The trial court accordingly ruled that Morganton, as a bailee of the greige goods, was obligated to deliver them pursuant to Leadertex's demand. This order has now been complied with, and Leadertex has recovered its greige goods. Morganton nonetheless continues to hold as security over 130,000 yards of finished goods belonging to Leadertex, of which approximately 26,000 yards are non-defective.
 
 
 16
 The district court also held that the parties had agreed to settle disputes by arbitration, a standard practice in the industry. It further ruled, however, that Morganton had waived its right to compel arbitration. The trial judge found Leadertex had suffered severe economic prejudice by Morganton's delay in seeking that relief and by Morganton's having availed itself of the liberal discovery rules in the federal court system. And, Judge Duffy declared, Morganton was seeking to "have it both ways," by taking advantage of pre-litigation procedures for a number of months and then asserting its right to arbitration. The trial court concluded, in addition, that the scope of the agreement did not extend to the defamation claim, which it found was not integrally linked to the parties' contractual relationship. Defendant's motion to compel arbitration was therefore denied. From this denial Morganton appeals.
 
 DISCUSSION
 I Waiver
 
 17
 The lineage of what a member of this Court referred to as "the old judicial hostility to arbitration," Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978, 985 (2d Cir.1942) (Frank, J.), is of ancient origin, extending back to those days when the English judges opposed any innovation that would deprive them of their jurisdiction. See Bernhardt v. Polygraphic Co., 350 U.S. 198, 211 n. 5, 76 S.Ct. 273, 280 n. 5, 100 L.Ed. 199 (1956) (Frankfurter, J., concurring in part). Today federal policy strongly favors arbitration as an alternative dispute resolution forum. See Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 480-81, 109 S.Ct. 1917, 1919-20, 104 L.Ed.2d 526 (1989).
 
 
 18
 A district court has no discretion regarding the arbitrability of a dispute when the parties have agreed in writing to arbitration. McMahan Securities Co. v. Forum Capital Markets L.P., 35 F.3d 82, 85-86 (2d Cir.1994); Federal Arbitration Act, 9 U.S.C. Secs. 3-4 (1988). The question of whether a party's pretrial conduct amounts to waiver of arbitration is purely a legal one, and our review of this issue is de novo. See Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir.1985); cf. Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir.1987) (order denying motion to stay proceedings pending arbitration subject to de novo review). The factual determinations upon which a district court predicates its finding of waiver, nonetheless, are ordinarily not reversed unless they are clearly erroneous. See Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d 250, 251 n. 2 (4th Cir.1987); Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1159 (5th Cir.1986); Reid Burton Constr., Inc. v. Carpenters Dist. Council, 614 F.2d 698, 703 (10th Cir.), cert. denied, 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980); cf. St. Mary's Medical Center v. Disco Aluminum Prods. Co., 969 F.2d 585, 588-89 (7th Cir.1992) (waiver determination upheld unless clearly erroneous).
 
 
 19
 We have often and emphatically applied the strong federal policy favoring arbitration. See Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 45 (2d Cir.1993); David L. Threlkeld & Co. v. Metallgesellschaft Ltd., 923 F.2d 245, 250 (2d Cir.), cert. dismissed, 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991); Fleck v. E.F. Hutton Group, Inc., 891 F.2d 1047, 1050-53 (2d Cir.1989). The rule preferring arbitration, when agreed upon, had led to its corollary that any doubts concerning whether there has been a waiver are resolved in favor of arbitration. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Given this presumption of arbitrability, waiver of arbitration "is not to be lightly inferred." Rush, 779 F.2d at 887 (quoting Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir.1968)).
 
 
 20
 Whether or not there has been a waiver is decided in the context of the case, with a healthy regard for the policy of promoting arbitration. See Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir.1991). Of course, the amount of litigation (usually exchanges of pleadings and discovery), the time elapsed from the commencement of litigation to the request for arbitration, and the proof of prejudice are all factors to be considered. The proximity of a trial date when arbitration is sought is also relevant. See Com-Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574, 1576-77 (2d Cir.1991).
 
 
 21
 Although litigation of substantial material issues may amount to waiver, see Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457, 461 (2d Cir.), cert. denied, 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985), delay in seeking arbitration does not create a waiver unless it prejudices the opposing party, see Com-Tech, 938 F.2d at 1576; Rush, 779 F.2d at 887; Sweater Bee, 754 F.2d at 463. No "bright line" test determines the prejudice component of the waiver inquiry. See Kramer, 943 F.2d at 179.
 
 
 22
 The district court properly found that there was an agreement to arbitrate in the instant case. This ruling is correct in light of the district court's findings that Leadertex was on notice that arbitration is a widespread practice in the textile industry and that it had received some 100 forms incorporating the arbitration clause during the years of dealing between the parties. New York law allows an arbitration agreement to rest on "evidence of a trade usage or of a prior course of dealings." Schubtex, Inc. v. Allen Snyder, Inc., 49 N.Y.2d 1, 6, 424 N.Y.S.2d 133, 399 N.E.2d 1154 (1979). We now analyze the requirements for waiver, keeping in mind the principles discussed above.A. Delay
 
 
 23
 Under the present facts Morganton's conduct has been largely inconsistent with its present assertion of its right to compel arbitration. Morganton could have invoked the arbitration clause at the outset of the litigation, even in state court, but it chose not to. It then allowed seven months--from June to the end of December, 1993--to elapse after the case was removed to federal court before seeking to enforce the contractual arbitration clause. In none of the initial court papers it filed did Morganton raise the arbitration issue. For example, it submitted an answer, amended answer, and answer to the amended complaint, each of which raised numerous defenses and counterclaims, but none of these papers asserted the defense of arbitration.
 
 
 24
 During this interval Morganton availed itself of the federal forum by its energetic pursuit of discovery. Only at the eleventh hour, with trial imminent, and apparently to counter plaintiff's attempt to replevy its goods in defendant's hands, did Morganton belatedly act. Its proffered excuse for the delay--that it was forced to wait until it obtained from Leadertex in discovery copies of contracts containing the arbitration clause--is somewhat disingenuous, as Morganton always had its own copies of those contracts in its own possession.
 
 
 25
 Morganton's conduct strongly implies it forfeited its contractual right to compel arbitration. See Cotton v. Slone, 4 F.3d 176, 179-80 (2d Cir.1993) (waiver suggested by party's having engaged in discovery procedures not available in arbitration); Kramer, 943 F.2d at 179 (raising affirmative defenses and counterclaims without asserting right to compel arbitration a significant factor in waiver); Com-Tech, 938 F.2d at 1578 (proximity of trial when right finally asserted, coupled with defendants' full participation in discovery, supports a finding of waiver). As a consequence, we are firmly persuaded that Morganton's actions were inconsistent with its right to compel arbitration.
 
 B. Prejudice
 1. Discovery
 
 26
 Yet, however unjustifiable Morganton's conduct, there can be no waiver unless that conduct has resulted in prejudice to the other party. Rush, 779 F.2d at 887 (requiring prejudice). Contra Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390 (7th Cir.1995) (initial selection of federal forum constitutes presumptive waiver, even absent prejudice to other party "beyond what is inherent in an effort to change forums in the middle ... of a litigation"). The trial court found as a factual matter that Leadertex had been prejudiced by Morganton's engaging in extensive discovery and that it had suffered adverse economic consequences from Morganton's detention of its greige fabric. These findings were not clearly erroneous, but whether either was sufficient to effect a waiver requires further analysis.
 
 
 27
 The first ground for the district court's finding of prejudice was that Morganton took advantage of the federal system's liberal discovery procedures before seeking to have the case sent to arbitration, where such procedures are not available. Although Morganton did pursue various avenues of discovery, it does not follow that Leadertex was prejudiced. Both parties acknowledge that Morganton obtained no facts in discovery that would have been unavailable in arbitration: the only information disclosed by Leadertex was the identity of two witnesses to the alleged defamation, and the only documents produced were copies of 23 dye orders Morganton already had in its possession.
 
 
 28
 Since it has divulged no significant information in discovery, the only prejudice Leadertex can claim is the expense and delay inherent in the procedure. But pretrial expense and delay--unfortunately inherent in litigation--without more, do not constitute prejudice sufficient to support a finding of waiver. See Rush, 779 F.2d at 887-88; Hatzlachh Supply, 828 F.Supp. at 184. Nor does Leadertex appear to have in fact incurred any extraordinary expense in its limited responses to Morganton's discovery demands. Waiver may not therefore stand firmly on defendant's use of discovery.
 
 2. Economic
 
 29
 There remains to be considered whether waiver may be based on a finding of economic prejudice. Before Leadertex replevied its greige goods, virtually its entire fabric inventory was being held in Morganton's warehouse. In support of its motion for partial summary judgment on that cause of action, Leadertex asserted it was unable to fulfill customer orders or to generate cash flow strong enough to replenish its fabric supplies. As a result, Leadertex said, its sales for November and December of 1993 had fallen off by more than 90 percent from the previous year, customers were cancelling existing orders, and its existence as a going business was threatened. These claims understandably persuaded the district court that as a matter of fact Leadertex had suffered economic prejudice occasioned by Morganton's delay.
 
 
 30
 Concededly, Leadertex could have prevented some of its own hardship by immediately seeking to obtain replevin of its goods. It is therefore partially responsible for a measure of its own economic distress. The irreducible fact nonetheless remains that Morganton abandoned its right to enforce the parties' arbitration agreement for many months. Further, Leadertex's business is being harmed by the lack of resolution of the dispute because its goods are being held. The arbitration proceeding could have been commenced immediately upon the commencement of the lawsuit--all of the claims initially asserted were arbitrable, not just the eventual replevin claim. This economic harm would now be exacerbated were the belated initiation of arbitration compelled. We believe this suffices to demonstrate the prejudice necessary to support the district court's ruling that there was a waiver of arbitration.
 
 II Arbitration of Defamation Claim
 A. Scope of Arbitration Clause
 
 31
 We also agree with the district court that the defamation cause of action alleged falls outside the scope of the written arbitration clause in the contract. For this independent reason, the defamation claim must remain in federal court.
 
 
 32
 The district court's determination of the scope of an arbitration agreement is reviewed de novo. See Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 121 (2d Cir.1991). As with waiver, all doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone, 460 U.S. at 24-25, 103 S.Ct. at 941. However, " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " Haviland v. Goldman, Sachs & Co., 947 F.2d 601, 604 (2d Cir.1991), cert. denied, 504 U.S. 930, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992) (quoting AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960))); see also First Options of Chicago, Inc. v. Kaplan, --- U.S. ----, ----, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter ... courts generally ... should apply ordinary state-law principles that govern the formation of contracts.").
 
 
 33
 In sum, while the question is governed by the intent of the parties, see Haviland, 947 F.2d at 605; The Continental Group, Inc. v. NPS Communic., Inc., 873 F.2d 613, 617 (2d Cir.1989) (New York law the same), that intent will be broadly construed, and "arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,' " McMahan, 35 F.3d at 88 (quoting S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 194 (2d Cir.1984) (quoting Warrior & Gulf, 363 U.S. at 582-83, 80 S.Ct. at 1352-53)); David L. Threlkeld, 923 F.2d at 250; Chevron U.S.A., Inc. v. Consol. Edison Co. of New York, 872 F.2d 534, 537 (2d Cir.1989). Further, when the contract's arbitration clause is a broad one, "the strong presumption in favor of arbitrability applies with even greater force." Shearson Lehman, 944 F.2d at 121.
 
 
 34
 The arbitration clause set forth in Morganton's dyeing contracts is broadly written: "Any controversy or claim arising under or in relation to this order or contract, or any modification thereof, shall be settled by arbitration." The defamation claim does, at least in part, "aris[e] under or in relation to" the dyeing contracts. The defamatory statement was allegedly made to a representative of one of the clothing manufacturers that had rejected defective fabrics, and contained, inter alia, a charge that Leadertex deliberately supplied its customers with substandard goods.
 
 
 35
 B. The Defamation Claim Does Not Fall Within The Contract
 
 Arbitration Clause
 
 36
 The defamation claim is thus factually quite closely related to the contract claims, although legally distinct from them. Because truth is a defense to defamation, resolution of this cause of action will necessitate examining the same evidence regarding Leadertex's and Morganton's contractual performance that is to be tried by the district court. But at the same time, the defamatory statement also allegedly contained a number of charges extending beyond core issues of dyeing and finishing goods contracts: namely, that Leadertex is dishonest and incompetent, and that it acted with intent to defraud its customers.
 
 
 37
 It is not particularly helpful in the case at hand to recite the various rules governing whether factual allegations subject a matter to arbitration: some of these rules ask, for example, whether the factual allegations "touch matters" governed by the parties' contracts, see Genesco, 815 F.2d at 846 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624 n. 13, 105 S.Ct. 3346, 3352 n. 13, 87 L.Ed.2d 444 (1985)); whether the allegations "arise from" contract performance, see Popper v. Monroe, 673 F.Supp. 1228, 1230 (S.D.N.Y.1987); whether they are "integrally linked" to the contractual relation, see id.; or whether they somehow "pertain to" it, see Coudert v. Paine Webber Jackson & Curtis, 705 F.2d 78, 82 (2d Cir.1983). None of these formulations itself yields a principled way of here deciding whether these claims should be sent to arbitration.
 
 
 38
 As with any contractual matter our main concern in deciding the scope of arbitration agreements is to "faithfully reflect[ ] the reasonable expectations of those who commit themselves to be bound by [them]." Haviland, 947 F.2d at 605 (refusing to extend arbitration provisions of New York Stock Exchange Rules to controversies not arising out of "exchange-related business"); see also Fleck, 891 F.2d at 1053 (defamation governed by employment arbitration rule if rule's language "would lead a reasonable applicant to expect arbitration of claims such as these"); Fuller v. Guthrie, 565 F.2d 259, 261 (2d Cir.1977) (folksinger's allegedly slanderous statements regarding concert organizer not foreseen by clause providing for arbitration of disputes involving "musical services").
 
 
 39
 The exact content of the allegedly defamatory statement must be closely examined to see whether it extends to matters beyond the parties' contractual relationship. Compare Fleck, 891 F.2d at 1053 (statements that broker had lost his license and was "basically a criminal" relevant to job performance and so subject to employment arbitration, but not statement that broker was a disbarred lawyer) with McMahon v. RMS Electronics, Inc., 618 F.Supp. 189, 192 (S.D.N.Y.1985) (employment arbitration clause covered published statements regarding plaintiff's termination, but not employer's statement to fellow employee that plaintiff was the "company drunk").
 
 
 40
 Turning to the statement as it appears in plaintiff's amended complaint, we note that it contains four separate clauses, each of which implicates matters beyond the contractual performance of the parties. Morganton allegedly represented that Leadertex was (1) generally dishonest in its business practices, (2) incapable of supplying conforming goods to manufacturers, (3) in the practice of selling defective goods, and (4) guilty of attempting to defraud Jones New York by shipping it defective goods. None of these representations is about the contract between Morganton and Leadertex, which set forth only their agreement for Morganton to provide dyeing and warehousing services to Leadertex. There is nothing to indicate that, when Morganton and Leadertex included an arbitration clause in their dyeing and warehousing agreement, they could reasonably have expected, or even contemplated, that that clause also would extend to a defamation claim based on statements about subjects other than Morganton's services for Leadertex. Because we must enforce the parties' reasonable expectations, we conclude that Leadertex's defamation cause of action is not governed by the parties' arbitration agreement and would therefore be excluded from arbitration even if the arbitration had not been waived.
 
 CONCLUSION
 
 41
 Accordingly, the order of the district court denying defendant's motion to compel arbitration is affirmed.