108 F.3d 329
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Terrence BURNS, M.D.; John Zoll, Plaintiffs-Appellees,
v.
IMAGINE FILMS ENTERTAINMENT, INC.; Universal City Studies,
Inc.; MCA, Inc., Defendants-Appellants.
 No. 96-7785.
 United States Court of Appeals, Second Circuit.
 March 6, 1997.
 
 APPEARING FOR APPELLANTS:DAVID O. CARSON (Richard Dannay, Schwab Goldberg Price & Dannay, New York, New York, Kenneth W. Africano, Diane C. Piotrowski, Damon & Morey, Buffalo, New York, of counsel ).
 APPEARING FOR APPELLEES:JEREMIAH J. McCARTHY (Paul B. Zuydhoek, David S. Teske, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, New York, of counsel ).
 PRESENT: ELLSWORTH A. VAN GRAAFEILAND, PIERRE N. LEVAL, JOSE A. CABRANES, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Western District of New York and was argued.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court be and it hereby is VACATED AND REMANDED to the District Court for further proceedings consistent with this order. In light of our decision on the merits, we deny the plaintiffs' motion, pursuant to Fed. R.App. P. 38, for attorney's fees and costs.
 
 
 3
 Plaintiffs Terrence Burns, M.D. and John Zoll brought this copyright infringement action in 1992, claiming that they collaborated on two screenplays about firefighters which they sent to Anthony Yerkovich, a California screenwriter. Plaintiffs entered into a series of agreements in 1988 and 1989 ("Submission Agreements") in connection with the submission of their screenplays to Yerkovich.
 
 
 4
 The Submission Agreements provide that Anthony Yerkovich Productions ("AYP") will read the material submitted, and, if such material is used, it will pay the owner the reasonable value of the material. By their terms, the Submission Agreements inure to the benefit of AYP, together with "any company with which [AYP is] a party to an agreement for the production or financing of motion pictures or television programs and ... [AYP's] officers, agents, servants, employees, stockholders and representatives, as well as the officers, agents, servants, employees, stockholders and clients of the above-referenced other companies." The Submission Agreements also include the following relevant provisions:
 
 
 5
 If we are unable to agree as to the reasonable value [of the material], the amount will be conclusively determined by a panel of three arbitrators, one to be selected by each of us and they to select a third, all of whom shall be persons well acquainted with the entertainment industry.... The arbitrators' decision shall be controlled by the terms of this agreement, and [plaintiffs] agree that the amount of any award by said arbitrators may not exceed the minimum amount which would be payable for such material under the Writers Guild of America Basic Agreement if there were an employment agreement between you and [plaintiffs] for the preparation of such material.
 
 
 6
 [Plaintiffs] agree that any claim arising in connection with the subject matter of this agreement must be brought within six months after your first use of the material in question and that the provisions of the preceding paragraph shall apply to all such claims. Any claim not brought within said six-month period is hereby barred....[1]
 
 
 7
 [Plaintiffs'] sole right and remedy with regard to any unauthorized use by you of the material submitted herewith will be to submit the question of the value of the material appropriated without [plaintiffs'] consent to arbitration as aforesaid, and [plaintiffs] shall have no other rights or remedies against you in such regard.
 
 
 8
 Plaintiffs contend that, thereafter, defendants released the movie Backdraft, a film about firefighters, and that the screenplay for Backdraft used significant portions of plaintiffs' original, copyrighted screenplays.
 
 
 9
 In December 1994, Magistrate Judge Leslie G. Foschio issued a report recommending that, due to defendants' discovery abuses, the issue of access to plaintiffs' screenplays should be resolved against defendants. Magistrate Judge Foschio stated that the defendants' abuses were egregious enough to warrant striking the defendants' answer, and he warned that if defendants did not thereafter fully comply with plaintiffs' document requests, "plaintiffs may, if necessary, move the court for further sanctions."
 
 
 10
 On June 5, 1995, the plaintiffs filed a second motion to strike defendants' answer, based upon defendants' alleged disobedience of the court's discovery orders. On June 23, 1995, defendants sought leave to amend their answers to include affirmative defenses based on the Submission Agreements. Although the defendants had had the Submission Agreements in their possession since July 1992, they claimed to have only discovered the documents, in the office of a former associate at one of defendants' prior law firms, in April 1995. On October 25, 1995, defendants filed a motion to dismiss and/or stay this action, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), on the ground that the Submission Agreements require plaintiffs to submit their entire copyright infringement claim to arbitration.
 
 
 11
 On February 16, 1996, Magistrate Judge Foschio issued reports recommending, inter alia, that the plaintiffs' motion to strike defendants' answer should be granted and that the defendants' motions to dismiss and/or stay this proceeding and to amend their answers should be denied on the grounds that the instant action does not fall within the arbitration clause contained in the Submission Agreements or, in the alternative, the defendants had waived their right to arbitration.
 
 
 12
 On June 3, 1996, the district court accepted the magistrate judge's recommendations. This appeal only raises the question of whether the district court properly denied defendants' motion to dismiss and/or stay this proceeding. The plaintiffs have filed a motion for attorney's fees and costs, pursuant to Fed. R.App. P. 38, on the ground that the defendant's appeal is frivolous.
 
 
 13
 We affirm the order of the district court insofar as it found that the Submission Agreements did not provide for the parties to arbitrate the question of liability for copyright infringement. However, because we believe that the Submission Agreements do provide for the parties to arbitrate the question of damages, once the question of liability has been established, and because we conclude that the defendants have not waived their right to arbitrate this question, we vacate the district court's decision and remand the cause to the district court. The plaintiff's Rule 38 motion is also denied.
 
 
 14
 (A) Applicability of the Submission Agreements.
 
 
 15
 We review de novo the district court's determination of the scope of the arbitration clauses contained in the Submission Agreement. See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 27 (2d Cir.1995). We will resolve "any doubts concerning the scope of arbitrable issues ... in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 1983); see also McMahan Sec. Co. L.P. v. Forum Capital Markets L.P., 35 F.3d 82, 86 (2d Cir.1994). "Another way of expressing this is to say that arbitration must not be denied unless a court is positive that the clause it is examining does not cover the asserted dispute." Spear, Leeds & Kellogg v. Central Life Assurance Co., 85 F.3d 21, 28 (2d Cir.1996). However, notwithstanding the strong federal policy favoring arbitration, that policy "may not extend the reach of arbitration beyond the intended scope of the clause providing for it." Id.
 
 
 16
 In the instant case, the district court found that the agreement to arbitrate contained in the Submission Agreements only applied if the defendants admitted that they had used plaintiffs' work. Because in this case the defendants obviously did not admit using the plaintiffs' work, the district court found that the parties did not agree to arbitrate any aspect of their dispute.
 
 
 17
 We believe that the district court read the arbitration clauses of the Submission Agreements too narrowly. While we agree with the district court that the question of whether the defendants used the plaintiffs' work without permission was not to be arbitrated, nothing in the language of the Submission Agreements suggests that the defendants must admit to using the plaintiffs' work for the question of the reasonable value of that work to be arbitrable.
 
 
 18
 We conclude, instead, that once the question of use has been decided--either through litigation or through an admission of use--the Submission Agreements require the question of damages to be decided by arbitration, if the parties cannot agree on the reasonable value of the work. Accordingly, we disagree with the district court insofar as it found that the Submission Agreements did not apply at all to the instant dispute.
 
 
 19
 (B) Waiver of Arbitration Rights.
 
 
 20
 We review de novo the district court's determination with respect to "[t]he question of whether a party's pretrial conduct amounts to waiver of arbitration." Leadertex, 67 F.3d at 25. We review the factual determinations upon which a district court predicates its finding of waiver for clear error. Id. "Any doubts concerning whether there has been a waiver are resolved in favor of arbitration." Id.
 
 
 21
 While litigation of substantial material issues may amount to waiver, see Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457, 461 (2d Cir.1985), "delay in seeking arbitration does not create a waiver unless it prejudices the opposing party." Leadertex, 67 F.3d at 25. Furthermore, "however unjustifiable [a party's] conduct, there can be no waiver unless that conduct has resulted in prejudice to the other party." Id. at 26. Pretrial expense and delay, "without more, do not constitute prejudice sufficient to support a finding of waiver." Id.
 
 
 22
 Waiver is "the intentional relinquishment of a known right." United States v. RePass, 688 F.2d 154, 158 (2d Cir.1982). Upon reviewing the record, we conclude that it is clear that defendants did not know that the Submission Agreements permitted them to arbitrate this dispute until very shortly before they requested arbitration. Arbitration is so clearly in defendants' interest that it is difficult to believe any other account of the matter. Furthermore, given the fact that plaintiffs themselves signed the Submission Agreements, while defendants are merely third-party beneficiaries under the agreements, and the fact that plaintiffs may themselves have contributed to the delay in seeking arbitration (by failing to produce the Submission Agreements in discovery), it makes little sense, in our view, to penalize the defendants for their failure to raise their arbitration claim earlier.
 
 
 23
 In addition, while there is no doubt that the pretrial expenses and delay in this case prior to defendants' demand for arbitration were substantial, we conclude that here, where the only issue to be decided by the arbitrator is the question of damages, the plaintiffs have not shown prejudice sufficient to support a finding of waiver. The pretrial expense and delay in this case are attributable, at least in part, to litigation on the question of liability, rather than the question of damages. See Kramer v. Hammond, 943 F.2d 176, 180 (existence of non-arbitrable issues "more than justified the litigation that preceded the demand for arbitration"). Furthermore, there has not been any substantial litigation on the merits of the damages question. See Sweater Bee, 754 F.2d at 761. Accordingly, we hold that the district court erred when it found that defendants waived their right to arbitrate the question of damages.
 
 
 24
 The district court's sanctions order, purporting to strike the defendants' answers, was not a part of this appeal,[2] and therefore was not directly or fully considered by this Court. Accordingly, in entering this order, we intimate no view on the decision of the district court to strike the answers and we leave for another day any possible consideration of that question in any appeal that may be filed in the future.
 
 
 25
 If and when the district court determines on remand that a judgment on the question of liability shall enter for plaintiffs, the court shall enter a judgment to that effect, which judgment shall include a direction that the question of damages shall be resolved pursuant to the terms of the Submission Agreements, either by the agreement of the parties or by arbitration.
 
 
 26
 We have considered all of the plaintiffs' remaining arguments on appeal and find them to be without merit.
 
 
 27
 Accordingly, the order of the District Court is VACATED AND REMANDED to the District Court for further proceedings consistent with this order.
 
 
 
 [1]
 We read this six-month limitation as a notice provision, requiring the plaintiffs to notify AYP of any claim within six months after "first use". The plaintiffs complied with this provision by providing notice to AYP on July 16, 1991, two months after the May 1991 release of Backdraft. Cf. Davies v. Krasna, 14 Cal.3d 502, 512, 535 P.2d 1161, 1167 (1975) (breach of contract claim based on use of literary property accrues not when the literary property is incorporated into the defendant's script, but when the defendant's work is publicly exhibited)
 
 
 [2]
 The defendants contested the order striking their answers and applied to the district court for certification of that order for interlocutory appeal under 28 U.S.C. § 1292. We have been informed by appellants, and appellees do not contest, that the district court denied that application. See Appellants' Reply Brief at 1, n. 1