**INTERNATIONAL CEMENT AGGREGATES, INC.,**
Plaintiff,

v.

**ANTILLES CEMENT CORP. and Mateco, Inc., Defendants.**

**No. Civ. 99–1341(SEC).**

United States District Court,
D. Puerto Rico.

Aug. 10, 1999.

Murray J. Belman, Thompson Coburn LLP, Washington, D.C., Federico Calaf-Legrand, Reichard & Calaf, San Juan, Puerto Rico, for plaintiff.

Lino J. Saldaña, Saldaña, Saldaña-Egozcue & Vallecillo, PSC, Santurce, Puerto Rico, for defendants.

**OPINION AND ORDER**

CASELLAS, District Judge.

Pending before the Court is a motion to dismiss for lack of subject matter jurisdiction filed by defendants Antilles Cement Corp. ("ACC") and Mateco, Inc. ("Mateco") (Docket # 10). Upon careful consideration of the parties' arguments and the applicable law, defendants' motion to dismiss is **GRANTED.**

Plaintiff International Cement Aggregates, Inc. ("ICA") filed an action pursuant to diversity jurisdiction against ACC and Mateco for collection of monies in the amount of $181,181.56. According to plaintiff, on March 5, 1996, ICA and Mateco entered into a contract of sale ("the Contract") to deliver 90,000 metric tons of bagged cement at $74.50 per metric ton. During 1996 and 1997 ICA delivered bagged cement to defendants pursuant to the Contract, and invoiced them for those deliveries in the previously stated amount of $181,181.56. ACC and Mateco refused to pay the amount, claiming that ICA failed to comply with the specific requirements of the Contract.

On June 4, 1997, ICA filed a complaint against defendants in the Court of First Instance of Puerto Rico, Superior Court of Bayamon, titled *International Cement Aggregates, Inc. v. Antilles Cement Corp. and Mateco, Inc.,* Civil No. DCD 97–1234. (Docket # 10, Exhibit A) Defendants then filed a counterclaim requesting specific performance of the contract and claiming $1,600,000.00 in damages for breach of contract. Id., Exhibit B.

On August 28, 1997, ICA filed a motion requesting the dismissal of the defendants' counterclaim on the ground that the court lacked jurisdiction over the breach of contract counterclaim. According to ICA, defendants must arbitrate their counterclaim since paragraph 8 of the Contract reads: "claim arising out of or relating to this agreement or any alleged breach thereof shall be determined by arbitration in New

York in accordance with the laws of New York." Id., Exhibits C, D.

On September 11, 1997, ICA filed a motion for judgment on the pleadings based on defendants' admission of the debt. Id., Exhibit E. On September 19, 1997, defendants responded to ICA's motions for judgment on the pleadings and to dismiss the counterclaim. Id., Exhibit F.

On October 9, 1997, the Superior Court of Bayamon denied ICA's motion for judgment on the pleadings. (Docket # 2, ¶ 13) On October 14, 1997, ICA replied to defendants' response. (Docket # 10, Exhibit G) On November 13, 1997, ICA filed a motion for reconsideration. Id., Exhibit H. On January 20, 1998, ICA presented to ACC, as agent of Mateco, a demand letter for arbitration, requesting consent to arbitration within 10 days. (Docket # 2, Exhibit B).

On March 26, 1998, defendants replied to ICA's motion for reconsideration. (Docket # 10, Exhibit K) On April 28, 1998, ICA replied to defendants' response. Id., Exhibit L.

On March 25, 1999, the Superior Court of Bayamon denied both ICA's motion to dismiss defendants' counterclaim based on the arbitration provision (paragraph 8 of the Contract) and ICA's motion for reconsideration of the denial of ICA's petition for judgment. ("March 25th Order") Id., Exhibit N. According to ICA's counsel, ICA did not receive the Court's order until April 5, 1999, four days after ICA filed the present complaint on April 1, 1999. (Docket # 2, ¶ 19)

The present complaint states, in pertinent part, that "Defendants' counterclaim for breach of contract is subject to the arbitration provision, paragraph 8 of the ·Contract." (Docket # 2, ¶ 23) According to plaintiff, Section 4 of the Federal Arbitration Act (9 U.S.C. § 4) compels a federal district court to issue an injunction directing arbitration against a party that refuses to comply with an arbitration provision, if the party is subject to an agreement to arbitrate. Accordingly, ICA requests this Court to compel defendants to arbitrate their "breach of contract counterclaim" before an arbitration panel and order the Bayamon Superior to stay the same breach of contract counterclaim pending before it. Id., ¶ 26.

For the reasons discussed below, we find that the *Rooker–Feldman* doctrine mandates dismissal of the above-captioned case for lack of subject matter jurisdiction.

### Applicable Case law

■ It is a well-established principle that "[w]hen a party moves to dismiss a complaint for lack of subject matter jurisdiction, 'the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits.'" *Robins v. Max Mara, U.S.A., Inc.*, 914 F.Supp. 1006; 1007 (S.D.N.Y. 1996). "[T]his supplementation does not convert the motion into a Rule 56 summary judgment motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir.1986).

Courts have considerable discretion, under the liberal pleading standard of the Federal Rules of Civil Procedure, to decide when a complaint is formally insufficient and thus, subject to dismissal. Although the Court will not credit bald assertions or mere specious allegations, it will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir.1991).

### Analysis

■ Lower federal courts generally do not have jurisdiction to review state court decisions; rather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United State Supreme Court. This principle is known as the *Rooker–Feldman* doctrine. *See District of Columbia Ct.App. v. Feld-*

*man,* 460 U.S. 462, 482–86, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923). In upholding the doctrine, the Supreme Court stated:

> [L]ower federal courts possess no power whatever to sit in direct review of state court decisions. If [the party seeking relief] was adversely affected by the state court's decision, it was free to seek vindication of its federal right in the [state] appellate courts and ultimately, if necessary, in this Court.

*Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *see also* 28 U.S.C. § 1257.

As the Court explained, in this nation we have two "essentially separate legal systems." *Id.* at 286, 90 S.Ct. 1739. The Supreme Court continued: "[T]his dual system could not function if state and federal courts were free to fight each other for control of a particular case. Thus, in order to make the dual system work and to prevent needless friction between state and federal courts, it was necessary to work out lines of demarcation between the two systems." *Id.* For this reason, federal district courts lack subject matter jurisdiction to review state court decisions. *See Feldman,* 460 U.S. at 482, 103 S.Ct. 1303.

In the present, in the underlying state action the Bayamon Superior court denied ICA's motion to compel arbitration of defendants' counterclaim. Defendants argue, and this Court agrees, that by filing a petition to compel arbitration in this Court, ICA essentially requests this Court to overturn the state court ruling denying arbitration. This, the Court cannot allow. "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, any-

thing other than a prohibited appeal of the state-court judgment." *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring in the judgment).

The Court acknowledges the Second Circuit case cited by ICA, *Doctor's Associates, Inc. v. Distajo,* 107 F.3d 126 (2nd Cir.1997). In that case, the court failed to discover any cases that applied the *Rooker–Feldman* doctrine to deprive a district court of subject matter jurisdiction over a petition to compel arbitration pursuant to 9 U.S.C. § 4. However, the party in *Distajo* filed its petition to compel arbitration before any state court rulings on the merits, whereas a close scrutiny of the circumstances surrounding ICA's filing of the present complaint leads this Court to conclude that ICA filed its arbitration petition immediately after being aware of the Court's adverse ruling.[1] Notwithstanding, ICA's self-serving assurances that it did not receive the Bayamon Court's order denying the reconsideration until four days after it had filed its complaint to compel arbitration, ICA's arbitration petition strikes the Court as an attempt to circumvent the Bayamon Court's ruling and forego the appeal process before the Puerto Rico Court of Appeals and the Supreme Court of Puerto Rico.

Moreover, we reject ICA's contention that the Contract's arbitration provisions encompasses the "breach of contract" counterclaim without extending their penumbra over ICA's claim for the unpaid amounts pursuant to the same contract. ICA pretends to "have his cake and eat it, too": by filing its petition to arbitrate only the defendants' counterclaim without seeking arbitration of its intertwined "collection of monies" claim, ICA seeks to "dance with Laura and Georgina."[2] The Court

---

1. For a similar analysis, see *Brown & Roots, Inc. v. Breckenridge,* 187 F.R.D. 259 (S.D.W.Va.1999), fn. 2.

2. This phrase refers to a 19th–century Puerto Rican danza titled "Laura y Georgina", a romantic overture composed by Juan Morel Campos, in which he pays simultaneous romantic homage to Laura **and** Georgina. Ever since that song came to the public light, a person who seeks to "have it both ways" is

must cut in and put a stop to this jurisdictional "pas-de-deux." [3]

Upon review of the facts and the applicable case law, we find that this Court lacks subject matter jurisdiction to "review" the Bayamon Court's refusal to dismiss defendants' counterclaim.

### ICA's Waiver of Arbitrable Claims

■ Even assuming, *arguendo*, that the Court accepted ICA's contention that it filed its arbitration petition prior to its having knowledge of the Bayamon Court's adverse ruling, we would still dismiss the case for lack of subject matter jurisdiction, based on our finding that ICA's extensive litigation of the "breach of contract" counterclaim before the Superior Court of Bayamon constituted a waiver of its right to petition a federal forum to compel arbitration.

■ As noted by the Second Circuit Court of Appeals in *PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 106 (2d Cir.1997), "federal policy strongly favors arbitration as an alternative means of dispute resolution." (*See also Doctor's Assocs. v. Distajo*, 107 F.3d at 130; *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 480–81, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)). This preference for arbitration "[has] led to its corollary that any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In view of such clear case law, "[w]aiver of arbitration is not to be lightly inferred." *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir.1985)

■ Such arbitration-friendly policy, however, does not give a party *carte blanche* to invoke arbitration as a talismanic charm to preclude litigation in the

courts of any and all arbitrable claims. A party waives its right to arbitration when it engages in protracted litigation that prejudices the opposing party. *See Doctor's Assocs.*, 107 F.3d at 131. "[P]rejudice as defined by our cases refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Doctor's Assocs., Id.* at 134. Incurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver. *Id.* However, a party's clear pattern of conduct that evinces its intent to litigate its claims to its ultimate consequences will generally lead to a finding of waiver. For example, a party that engages in extensive pre-trial discovery and compels its adversary to respond to substantive motions waives its right to arbitration. *See Com–Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 938 F.2d 1574, 1576–77 (2d Cir.1991); other courts have found waiver of arbitrable claims when a party delayed invoking arbitration rights by filing multiple appeals and substantive motions while an adversary incurred unnecessary delay and expense, *see Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991), or engaged in discovery procedures not available in arbitration, *Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts. Corp.*, 996 F.2d 1478, 1480 (2d Cir.1993) (per curiam).

■ Pursuant to this case law, the Court must evaluate several factors to determine whether ICA has waived its right to arbitration, to wit: (1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prej-

---

said to be seeking to "dance with Laura and Georgina."

**3.** The Court also notes the compelling discussion of federalism, comity, and application of Rooker–Feldman to federal jurisdiction of

FAA petitions by Jean R. Sternlight, *Forum Shopping for Arbitration Decisions: Federal Courts' Use of Antisuit Injunctions Against State Courts*, 147 U.Pa.L.Rev. 91, 138 (1998).

udice. As noted in *Webster*, however, there is no bright-line rule, however, for determining when a party has waived its right to arbitration: the determination of waiver depends on the particular facts of each case. *Webster Auto Parts, Inc.*, 128 F.3d at 107.

### a. Time Elapsed from Commencement of Litigation

 The Bayamon Superior Court litigation commenced on June 4, 1997, and defendants filed their counterclaim on August 8, 1997. ICA filed its petition before this federal forum to compel arbitration on April 1, 1999. Therefore, approximately twenty (20) months passed between the time the defendants asserted arbitrable claims and ICA filed its petition to compel arbitration. This twenty-month delay, by itself, is not enough to infer waiver of arbitration. *See Rush*, 779 F.2d at 887; *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 461 (2d Cir. 1985). Rather, we must consider the delay in conjunction with (1) the amount of litigation that occurred during that period and (2) any proof that defendants ACC and Mateco were prejudiced by ICA's conduct during that period. *See Leadertex v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir.1995).

### b. Amount of Litigation

Before ICA filed its petition to compel arbitration in the present action on April 1, 1999, ICA had engaged in substantial legal skirmishes with defendants spanning a twenty-two month period from June 4, 1997 to March 30, 1999, to wit:

a. June 4, 1997—ICA files a complaint against defendants in the Court of First Instance of Puerto Rico, Superior Court of Bayamon (Docket # 10, Exhibit A)

b. Defendants file a counterclaim requesting specific performance of the contract and claiming $1,600,000.00 in damages for breach of contract. Id., Exhibit B.

c. August 28, 1997, ICA files a motion requesting the dismissal of the defendants' counterclaim. Id., Exhibits C, D.

d. September 11, 1997—ICA files a motion for judgment on the pleadings based on defendants' admission of the debt. Id., Exhibit E.

e. September 19, 1997—defendants respond to ICA's motions for judgment on the pleadings and to dismiss the counterclaim. Id., Exhibit F.

f. October 9, 1997, the Superior Court of Bayamon denies ICA's motion for judgment on the pleadings. (Docket # 2, ¶ 13)

g. October 14, 1997—ICA replies to defendants' response. (Docket # 10, Exhibit G)

h. November 13, 1997—ICA files a motion for reconsideration. Id., Exhibit H.

i. January 20, 1998—ICA presents to ACC, as agent of Mateco, a demand letter for arbitration, requesting consent to arbitration within 10 days. (Docket # 2, Exhibit B).

j. March 26, 1998—defendants reply to ICA's motion for reconsideration. (Docket # 10, Exhibit K)

k. April 28, 1998—ICA replies to defendants' response. Id., Exhibit L.

l. March 25, 1999, the Superior Court of Bayamon denies both ICA's motion to dismiss defendants' counterclaim and ICA's motion for reconsideration of the denial of ICA's petition for judgment. ("March 25th Order") Id., Exhibit N.

By engaging in substantial jurisdictional arguments and filing the concomitant substantive motions before the Bayamon Superior Court, ICA evinced a preference for litigation before the Commonwealth Court that supports a finding of waiver of its arbitrable claims. *See Leadertex*, 67 F.3d

at 26; *Kramer*, 943 F.2d at 179; *Com-Tech Assocs.*, 938 F.2d at 1576–77.

#### c. Additional Evidence of Intent to Litigate

Other aspects of ICA's conduct support a finding of waiver in the counterclaim before us. First, ICA filed a lengthy motion for reconsideration of the Court's refusal to enter judgment on the pleadings, as well as its extensive petition to arbitrate defendants' counterclaim. *See* Docket # 10, Exhibits C, D, H. Furthermore, while waiting for months on end on the Bayamon Court's reconsideration ruling, ICA filed several replies to defendants' motion, which reveals both ICA's intention to litigate and its ample opportunity to fully and fairly litigate all the pending controversies before the Bayamon Superior Court. Id., Exhibits G, L.

In conclusion, it is clear that ICA acted inconsistently with its contractual right to arbitration. Therefore, we now consider whether defendants ACC and Mateco were prejudiced by ICA's conduct.

#### d. Prejudice

Several courts have held that sufficient prejudice to sustain a finding of waiver exists when a party takes advantage of pre-trial discovery not available in arbitration. *See Zwitserse*, 996 F.2d at 1480; *Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir. 1993) (basing finding of prejudice on delay and expense caused by defendant's extensive pre-trial litigation as well as defendant's "secur[ing] for himself the benefits of pretrial discovery that is often unavailable in an arbitral forum"); cf. *Leadertex*, 67 F.3d at 26 (finding that plaintiff was not prejudiced by pre-trial discovery where defendant "obtained no facts in discovery that would have been unavailable in arbitration").

We find that ICA's protracted filing of substantive and procedural motions during a twenty-two month period, coupled with the extensive volley of replies and surreplies fired between the parties during that same period wrought substantial prejudice and drained extensive legal, fiscal and chronological resources from defendants ACC and Mateco. In light of ICA's twenty-two month trench warfare with defendants before the Bayamon Superior Court, and the Bayamon Court's incisive, cogent, thoughtful and thorough analysis of all pending claims between the parties (see Docket # 10, Exhibit N), granting the petition to arbitrate would create serious prejudice not only upon defendants, but also specifically upon the Bayamon Superior Court, who handled the case with deftness and efficiency, and generally upon the Commonwealth Courts of Puerto Rico, upon whom a decision to arbitrate under these facts would generate a "chilling effect" upon many Superior Court judges, who would decline to decide cases with long, thoughtful and time-consuming opinion, lest federal courts vacate their rulings with the stroke of an arbitration-friendly pen.

#### Conclusion

Under Rule 12(h)(3), "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3); *Francis v. Goodman*, 81 F.3d 5, 8 (1st Cir.1996) ("federal courts are not at liberty to overlook limitations on their subject matter jurisdiction.") Based on the previous analysis and the facts before this Court, the Court **GRANTS** Defendants' motion to dismiss, concluding it lacks subject matter jurisdiction. (Docket # 10) Plaintiff's complaint is **DISMISSED**. Judgment shall follow accordingly.

**SO ORDERED.**