**In The Matter of The Complaint of SOUTHWIND SHIPPING CO., S.A., as Owner of the S/T STOIC, for Exoneration from or Limitation of Liability.**

**No. 79 Civ. 6185 (PNL).**

United States District Court,
S.D. New York.

March 16, 1989.

Bigham Englar Jones & Houston, New York City (Douglas A. Jacobsen, Stephen V. Rible, Karin A. Schlosser, of counsel), for Charterers-claimants.

Burke & Parsons, New York City (Stephen P. Kyne, of counsel), for petitioner.

## OPINION AND ORDER

LEVAL, District Judge.

Plaintiff, Southwind Shipping Co., S.A., owner of the S/T STOIC (the "Owner"),

moves pursuant to Section 10 of the United States Arbitration Act of 1925, 9 U.S.C. § 10, to vacate an arbitration award rendered on November 24, 1986. Nippon Steel Corporation, Tokio Marine & Fire Insurance Co., Ltd., C. Itoh & Co., Ltd., The Marubeni Co. and Mitsui & Co., Ltd. (collectively "Claimants") cross-move pursuant to Section 9 of the Arbitration Act, 9 U.S.C. § 9, to confirm the award. Claimants also move for summary judgment on the Owner's claim for exoneration from or limitation of liability under the Limitation of Vessel Owner's Liability Act, 46 U.S.C. App. §§ 181 *et seq.* ("Limitation Act").

## Background

This action involves the stranding and sinking of the S/T STOIC ("Vessel") off an islet in the East China Sea on the morning of August 19, 1979. At the time of the stranding, the Vessel was transporting cargo under a contract of affreightment ("COA") made by the Owner, with Nippon Steel and C. Itoh & Co., Ltd. As a result of the sinking, Claimants sustained a cargo loss of over 9 million dollars.

Subsequent to the loss of the Vessel, governmental investigations were undertaken by the three maritime nations involved: (1) Japan, where the casualty occurred; (2) Greece, the domicile of the Master, officers and crew; and (3) Liberia, which licensed the Vessel's Master and other officers, and under whose flag the Vessel sailed. Each of the governmental investigations independently determined that the loss of the Vessel had resulted from errors in navigation committed by the Master.[1]

---

1. The Japanese Maritime Safety Agency ("JMSA") based its determination on an on-site investigation and interrogation of the Vessel's Master, Third Officer, Watch Engineer and Quartermaster, and the Captain of one of the fishing boats in the area at the time of the casualty. JMSA found that the stranding was caused by the negligent navigation of the Master. It referred the matter to the Public Prosecutor for Criminal Proceedings. Thereafter, the Master was indicted and convicted of "Interruption of Safe Traffic by Occupational Negli-

gence," a crime under the Japanese Penal Code, without a formal trial.

The Greek Government convened an inquiry where sworn statements were obtained from Vessel personnel. The Preliminary Inquiry Report found the Master "responsible for the grounding and the subsequent sinking of the Vessel 'STOIC' owing to the bad estimation of the distance from the coast as well as of the sea current." The Report proposed the institution of Penal and Disciplinary Prosecution against him.

On January 8, 1980, Claimants filed a claim in this court against the Owner for the loss of the Vessel's cargo. Because the COA provided for arbitration in New York of "any dispute or difference [that] should arise under this contract," Judge Sofaer stayed the action and directed the parties to arbitrate. The court retained jurisdiction to decide the issue of limitation of liability.

The arbitration panel conducted hearings in five sessions between September 13, 1982 and October 13, 1983. The Owner contended at arbitration that the stranding and loss were caused solely by the negligent navigation of the Master and that it was, therefore, protected from liability by the "negligent navigation" exception in the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. §§ 1300, et seq. In 1986, the panel issued its decision [2] finding that the Master's negligence was not the sole cause of the stranding, and awarding Claimants $9,040,687.75 plus prejudgment interest (the "Award"). The arbitrators found that the stranding was due in part to the negligence of the unlicensed Third Officer. It concluded that this fact, along with the Vessel's "unseaworthy condition was the principal cause of the Vessel's stranding and subsequent loss." (Decision at 12).

## Discussion
### The Arbitration Award

This court's function in reviewing an arbitration award is limited. An arbitration award should not be vacated unless one of the grounds specified in Section 10 of the Arbitration Act is found, or the conduct of the arbitrators constituted a "manifest disregard" of applicable law. *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930 (2d Cir.1986). The Owner maintains

that the Award should be vacated because the Award includes improper parties, the majority arbitrators displayed "evident partiality," and the arbitrators acted in manifest disregard of the law.

### 1. Proper Parties

■ The Owner contends that the Award improperly included awards in favor of Tokio Marine, Marubeni and Mitsui. The Owner argues that because these entities were not parties to the COA, the arbitration clause in the COA is not applicable to them and they should not be able to collect the Award. Its contentions are without merit. Tokio Marine was the subrogated underwriter of the cargo, and the real party in interest. Mitsui and Marubeni were named on the bills of lading which incorporated "all terms and exceptions of the Contract of Affreightment," including the arbitration clause.

An arbitration clause in a contract of affreightment is deemed incorporated in the bill of lading, and binding on the parties to the bill of lading if the bill of lading states that it is governed by the contract. *Son Shipping v. De Fosse & Tanghe*, 199 F.2d 687 (2d Cir.1952); *Siderius, Inc. v. M.V. "IDA PRIMA"*, 613 F.Supp. 916, 919 (S.D.N.Y.1985).

Courts have consistently drawn a distinction between arbitration clauses specifically identifying the parties to which it applies, and a broader form of arbitration clause which does not restrict the parties. *See Siderius*, 613 F.Supp. at 919; *Amstar Corp. (American Sugar Div.) v. S.S. Union Australia*, 445 F.Supp. 940, 941 (S.D.N.Y.1978); *Lowry & Co., Inc. v. S.S. Le Moyne D'Iberville*, 253 F.Supp. 396, 398 (S.D.N.Y.1966).

In *Son Shipping*, the consignee of oil cargo appealed an injunction preventing it

The Liberian Government's investigation was based on various documents including the records of the JMSA investigation and the Japanese criminal proceedings. After reviewing this material, the Bureau of Maritime Affairs commenced a Suspension and Revocation Proceeding against the Master before a Liberian Investigating Officer. He presented evidence concerning the casualty. The Investigating Officer concluded that he had negligently navigated the Vessel and recommended that his Liberian License be suspended for a period of time. This Report was forwarded to the Commissioner of Maritime Affairs, and thereafter adopted.

**2.** Two of the arbitrators joined in the majority decision. The third dissented.

from arbitrating its claim against the shipowner for damages resulting from an alleged short delivery. The bills of lading specifically referred to the contract of affreightment, and incorporated all the terms of the contract "whatsoever." The arbitration clause in the contract of affreightment covered "[a]ny and all differences and disputes of whatsoever nature arising out of this charter." 199 F.2d at 688. The Second Circuit dissolved the injunction, holding that the arbitration clause was incorporated into the bills of lading and therefore governed disputes between the shipowner and consignee.

> Where terms of the charter party are ... expressly incorporated into the bills of lading they are a part of the contract of carriage and are binding upon those making claim for damages for the breach of that contract just as they would be if the dispute were between the charterer and the shipowner.

*Id.*

The Owner's reliance on *Import Export Steel Corp. v. Mississippi Valley Barge Line Co.,* 351 F.2d 503 (2d Cir.1965), is misplaced. *Import* involved an arbitration clause which covered disputes "between the Disponent Owners and the Charterers." *Id.* at 505. Because of that limitation in the clause (which is not here present), the Second Circuit held that only the charterer of the vessel, and not the notify-party under the bill of lading, was covered by the arbitration clause. *Id. See also Production Steel Co. of Illinois v. S.S. Francois L.D.,* 294 F.Supp. 200 (S.D.N.Y.1968).

■ The arbitration clause here in issue, embracing "any dispute or difference [which] should arise under th[e] contract," is of broad scope, and was incorporated into the bills of lading. The Owner, as a signatory to this broad agreement to arbitrate, is fully on notice of its terms and may not avoid the claims of Marubeni and Mitsui to benefit from its coverage, regardless of whether the Owner could compel them to arbitrate. I reject the Owner's contention that the Award should not extend to all Claimants.

## 2. Evident Partiality and Manifest Disregard of the Law

The Owner contends that the arbitrators' decision was unsupported by the evidence. It frames this contention as both "evident partiality" of the majority arbitrators against the Owner's interests, and a manifest disregard of applicable law. The Owner alleges that the majority arbitrators did not "specify any evidence to support their conclusion that '... the acting Third Officer's presence and acts were a cause of the stranding.'" (Southwind Mem. at 9). It alleges that, to the contrary, "all the evidence of crew members on board the Vessel placed the Master on the bridge in charge of all navigation decisions." *Id.*

The cases which discuss the doctrine of evident partiality generally concentrate on the relationship between the arbitrators and one of the parties, and look for ties, either economic or otherwise, that make it inappropriate for the arbitrator to hear the arbitration. *See, e.g., Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds,* 748 F.2d 79, 84 (2d Cir.1984); *Sidarma Societa Italiana Di Armamento Spa, Venice v. Holt Marine Industries, Inc.,* 515 F.Supp. 1302, 1306 (S.D.N.Y.), *aff'd,* 681 F.2d 802 (2d Cir.1981). The Owner concedes this "is admittedly not an instance where any of the arbitrators was disqualified from acting as an arbitrator by reason of any personal or commercial relationship with the parties or any financial interest in the outcome of the dispute." Dillon Aff. ¶ 8. Rather, the Owner argues that partiality should be inferred from the fact that the majority arbitrators' findings were unsupported by the evidence.

The doctrine of manifest disregard of the law looks at the refusal of arbitrators to follow a rule of law.[3] The Owner does not

---

**3.** In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* the Court of Appeals for the Second Circuit discussed the principle of "manifest disregard of the law" as follows:

The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard"

argue that the arbitrators purposefully ignored the law, but rather argues that a manifest disregard of the law should be concluded from the fact that the arbitrators' decision was against the weight of the evidence.

I need not reach the question whether evident partiality or manifest disregard of the law can ever be made out by the mere showing that the arbitrators' conclusion was unsupported by the evidence, because here there was substantial evidence in the record to support the arbitrators' conclusions.

■ At arbitration, the Owner argued that the stranding was caused solely by the Master, and thus fell within the "negligent navigation" exception in COGSA. The arbitrators rejected this argument and rejected the Master's account of the events leading up to the stranding. They found, contrary to the Master's testimony given to the governmental investigators, that the radars were not turned on or used prior to the stranding, and that the unlicensed Third Officer had relieved the Chief Officer of the watch prior to the casualty. The arbitrators rejected the Owner's argument that the Master could have and should have realized the Vessel's perilous position and remedied the situation. They found instead that the acts of the incompetent and unlicensed Third Officer contributed to the stranding, and that the Master was either not on the bridge or not fully in command of the Vessel when the events leading to the stranding occurred. Thus, they found that the Owner had failed to prove that the stranding came within the negligent navigator exception.

■ The Owner contends that the arbitrators ignored the governmental investiga-

tors' findings that the stranding and loss of the Vessel resulted from negligence on the part of the Master. This contention ignores the differing purposes of the inquiries. The foreign governments conducted investigations in order to ascertain whether criminal charges against the Master were appropriate. They were concerned only with the Master's misconduct; they were not concerned with, and their findings do not exclude, additional possible causes of the stranding. The arbitrators did not disagree with the foreign governments' conclusions that the Master acted negligently, but merely found that such negligence was not the *sole* cause of the stranding. Thus, the arbitrators' findings and conclusions were not necessarily inconsistent with those of the foreign governments.

■ The arbitrators reviewed the record and applied COGSA to reach the conclusion that Claimants established a *prima facie* case and that the Owner failed to prove that the COGSA exception for negligent navigation applied. There is no basis for finding evident partiality or manifest disregard of the law.

An arbitration award should be confirmed where "*a* ground for the arbitrator's decision can be inferred from the facts of the case." *Siegel v. Titan Industrial Corp.*, 779 F.2d 891, 894 (2d Cir.1985) (emphasis added). Accordingly, the Award in favor of Claimants is confirmed.

*Limitation of Liability*

■ The Limitation Act provides that liability of a vessel owner that is incurred "without the privity or knowledge of such owner ... shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." 46 U.S.C.App. § 183(a). Knowledge is

implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it. To adopt a less strict standard of judicial review would be to undermine our well established deference to arbitration as a favored method of settling disputes when agreed to by the parties. Judicial inquiry under the "manifest disregard" standard is therefore extremely limited. The governing law alleged to have been ignored by the arbitrators must be well

defined, explicit, and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it.

808 F.2d at 933–34 (citations omitted). *See Siegel v. Titan Industrial Corp.*, 779 F.2d 891, 893 (2d Cir.1985); *Saxis Steamship Co. v. Multifacs International Traders, Inc.*, 375 F.2d 577, 582 (2d Cir.1967).

deemed to exist where the owner of the vessel had means of knowledge or where knowledge would have been obtainable from reasonable inspection. The owner is deemed in privity and limitation is denied for any loss caused by reason of fault or neglect with respect to providing a competent Master and crew or seeing that the ship is seaworthy. *See Tug Ocean Prince, Inc. v. United States,* 584 F.2d 1151, 1155 (2d Cir.1978), *cert. denied,* 440 U.S. 959, 99 S.Ct. 1499, 59 L.Ed.2d 772 (1979).

Claimants move for summary judgment on the issue of limitation of liability. They argue that once confirmed, the arbitrators' decision requires this court to conclude that the sinking was with the privity and knowledge of the Owner, and therefore the Owner is not entitled to limit its liability.

█ The Owner argues that it is not collaterally estopped from litigating the issues of privity and knowledge. The Owner argues that, because Judge Sofaer reserved jurisdiction on the limitation of liability, this court must try the factual issues that govern a determination of limitation of liability, and may not find preclusion based on the fact-finding of the arbitrators. Both logic and authority are to the contrary. It is true that only the district court may enter judgment on the issue of limitation of liability. But it does not follow that the district court must retry all issues of fact and may not accept facts previously established by trials in other tribunals.

█ This is not to say that the district court must accept the arbitrators' findings. Nor do I assert that confirmation of an arbitration award requires as a matter of consistency that arbitral findings be accepted on the issue of limitation of liability. Nevertheless, under the evidence of this case, I find that the Owner's privity and knowledge have been properly and sufficiently established.

The arbitrators determined that the Owner had not exercised due diligence to make the Vessel seaworthy. That determination was based on several factual findings, in-

cluding that the "acting Third Officer was unlicensed and incompetent," and that the "Vessel was unseaworthy because it was not properly manned by a full complement of officers." The arbitrators concluded that the Owner's failure to exercise due diligence with respect to these unseaworthy conditions was "the principal cause of the Vessel's stranding and subsequent loss." Those findings support a finding a privity.

The arbitrators further found that the Owner had knowledge of these causative faults. The Master and the Third Officer each testified that the Third Officer was unlicensed and that the Owner knew it. Evidence also showed that the Owner had a long-standing policy of employing unlicensed watch officers in violation of Liberian manning regulations and safe watchstanding procedures recommended by the International Chamber of Shipping and the Intergovernmental Maritime Consultative Organization. This evidence is corroborated by the Liberian Safety Inspection Reports and by the Owner's Summary Condition Survey Reports for several years prior to the stranding. Thus, the findings of the arbitrators support a finding of knowledge.

█ Although the theory of liability under COGSA is distinct from the theory of privity and knowledge pursuant to Section 183(a), in this case the same factual findings pertain to both.[4] The Owner's privity and knowledge of the causative faults are established from admissions, exhibits, transcripts of testimony and documents in the Arbitration Record filed with the court. These sources are proper for consideration upon a motion for summary judgment. There is no reason to conduct a new trial on the issue of the Owner's privity and knowledge.

### Conclusion

The Owner's motion to vacate the Award is denied. Claimants' cross-motions to confirm the Award and for summary judgment

---

**4.** The critical factor in collateral estoppel is not the theory of liability on which the case proceeded, but whether liability is premised on the same factual issues in both proceedings. *Norris v. Grosvenor Marketing, Ltd.,* 632 F.Supp. 1193 (S.D.N.Y.), *aff'd,* 803 F.2d 1281 (2d Cir.1986).

on the issue of limitation of liability are granted. Claimants shall submit judgment on notice within ten (10) days.

SO ORDERED.